**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KRISTY GILPIN** | **CIVIL ACTION** |
| **VERSUS** | **NO.** |
| **JUSTIN MINOR and<br>THE CITY OF ZACHARY** | |

# COMPLAINT

NOW COMES Complainant, Kristy Gilpin, a person of the full age of majority residing in the State of Louisiana, Parish of East Baton Rouge, who respectfully represents as follows:

1.

Made Defendants herein are the following:

**A.** **JUSTIN MINOR**, a person of the full age of majority who was at all times material hereto acting in the course and scope of his employment as an officer of the Zachary Police Department.

**B.** **THE CITY OF ZACHARY**, a political subdivision of the State of Louisiana that at all times material hereto maintained and controlled the Zachary Police Department and employed its officers including Justin Minor.

2.

Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C §§1331 and 1367, inasmuch as this matter arises under 42 U.S.C. §1983, *et seq.*, the United States Constitution, including the Fourth and Fourteenth Amendments, and Louisiana state law, including Louisiana Civil Code Articles 2315, 2316, 2317, 2320, 2324, and other applicable law.

3.

Venue is proper in this Honorable Court in part pursuant to 28 U.S.C §1391 as a substantial part of the events or omissions giving rise to the claim occurred within the Middle District of Louisiana.

**Introduction**

4.

This case is about what happens when a police officer misuses the power of the State to arrest a citizen without probable cause. That citizen was Mrs. Kristy Gilpin, a distinguished school administrator and beloved Zachary community member. She responded to a first-grade student's intentional misconduct – the smearing of fecal matter around the bathroom and tossing soiled toilet paper all over the floor – by directing and supervising the child to clean up the mess in a safe and orderly manner in the presence of two school nurses and a school counselor. There was no evidence of an injury, pain, physical harm, mental or psychological harm, or any suffering whatsoever by the child. Yet, Defendant Justin Minor undertook a criminal investigation, swore out an affidavit accusing Mrs. Gilpin of the felony of Cruelty to Juveniles without probable cause, and had Mrs. Gilpin arrested. The Louisiana Attorney General's office dismissed the criminal proceeding initiated by Minor against Mrs. Gilpin.

**Background and Factual Allegations**

**A. The Bathroom Accident**

5.

On the morning of January 17, 2025, first grader AA had an episode of fecal incontinence at Rollins Place Elementary School. She reported the incident to her substitute teacher and was permitted to go immediately to the nurse's office. No child was aware of the accident at this time.

6.

Two nurses were present, Sarah Felder and Kathy Cress. AA was given a clean set of clothes and allowed to use the bathroom next to the nurse's office. This bathroom was a single, private room. The nurses instructed AA to use the private bathroom to change and get cleaned up. Because of her age – six years old - she did so on her own.

7.

When AA came out of the bathroom, both nurses smelled a strong odor.

8.

Upon looking in the bathroom, they witnessed feces smeared on the wall, handicap bar, toilet paper dispenser and floor.

9.

Both nurses witnessed soiled toilet paper piled on the toilet seat and floor.

10.

AA smirked at the nurses.

11.

Neither nurse believed that AA had diarrhea.

12.

Based on these circumstances, both nurses believed AA had intentionally smeared the feces on the wall and spread the toilet paper all over the bathroom.

13.

The nurses do not usually call an administrator for a bathroom accident. However, because the nurses determined AA had misbehaved and because of the extent of the mess, the nurses chose to call for an administrator to deal with the misconduct of the child.

14.

Kristy Gilpin, the Assistant Principal, arrived in response to the call.

15.

Mrs. Gilpin saw the bathroom in the same state as witnessed by both nurses.

16.

The nurses told Mrs. Gilpin that AA had smirked at them when they opened the door.

17.

AA did not appear to the nurses or Mrs. Gilpin to be upset, distraught, or embarrassed.

18.

AA did not appear sick.

19.

The nurses told Mrs. Gilpin that this was a behavioral matter, not a medical issue, and they turned it over to Mrs. Gilpin for resolution.

**B. The Clean Up**

20.

Mrs. Gilpin, utilizing established pedagogical techniques of positive discipline and problem solving, instruct AA to clean up the mess that AA had made, and instrruced AA in how to do so.

21.

Mrs. Gilpin oversaw the clean-up done by AA, ensuring the soiled toilet paper was picked up, thrown away, or flushed.

22.

Mrs. Gilpin gave AA cleaning wipes and explained to AA how to properly use them by wiping a soiled area, then folding the cloth over to wipe again or throw away.

23.

Mrs. Gilpin then demonstrated how AA was to carefully wash her hands, fingers, and under her fingernails after the mess was picked up.

24.

The entire clean-up took no more than five minutes.

25.

Nurse Felder and Nurse Cress, as well as the school counselor Jessica Aslin, were outside the bathroom area aware of situation and the cleanup response.

26.

None of the three objected to the actions of Mrs. Gilpin.

27.

All three approved of the cleanup directed by Mrs. Gilpin.

28.

Nothing in this clean-up was done unsafely.

29.

In fact, it is exactly what Mrs. Gilpin would have done if her own child had made the mess.

30.

In a meeting with the parents of AA after the incident, AA's step-mother told Mrs. Gilpin and Principal Kelli Day that AA was wearing pull-up diapers because of recent, frequent accidents.

It is unusual and concerning for a first grader to wear pull-up diapers to school.

31.

Principal Kelli Day and the Supervisor of Pre-Kindergarten through Second Grade, Jessica Brister, were made aware of the accident and clean-up on January 17, 2025, the same day it occurred.

32.

At that time, neither they nor anyone investigated the matter or took any disciplinary action against Mrs. Gilpin.

33.

Articles 603, 609, and 610 of the Louisiana Children's Code require teachers and school personnel to report when they have cause to believe that a child's physical or mental health or welfare is seriously endangered as a result of abuse or neglect.

34.

Louisiana Revised Statute 14:403 requires such mandatory reporters to report child abuse immediately and makes the failure to do so a crime.

35.

The entirety of the incident was known to Superintendent Ben Necaise, several administrators at the central office, Principal Kelli Day, all the other teachers in the school, both nurses, many on the central office staff, and the resource officer at Rollins Place.

36.

None of these mandatory reporters ever reported the incident.

37.

This is because no reasonable person could have any cause to believe that AA's physical or mental health or welfare was endangered nor could any reasonable person have cause to believe any abuse, neglect, or crime occurred.

38.

Neither Minor nor any other employee of the Zachary Police Department ever pursued charges or other legal proceedings against Superintendent Ben Necaise, any other administrator at the central office, Principal Kelli Day, or any other teacher, nurse, central office staff, or resource officer at Rollins Place as mandatory reporters failing to report child abuse.

**C. AA Back in School After the Accident**

39.

AA continued to come to school for about a month after the accident.

40.

During that month, AA showed no signs of distress, embarrassment, or humiliation at school.

41.

Just the opposite, AA engaged regularly with Mrs. Gilpin in a friendly manner, to include exchanging smiling greetings and hugs in the hallway on multiple occasions.

42.

AA's teachers did not report any behavioral changes, nor did AA make any mention of the accident and the clean-up.

43.

On January 31, 2025, two weeks after the accident, AA's mother Jamisha Augustine texted AA's teacher stating, AA "was really excited about today and her shirt. So I'll send you over a picture. Have a great day." She included a picture of the shirt AA made on the school's "100th Day" celebration.

44.

On February 4, 2025, about three weeks after the accident, AA's mother Jamisha Augustine texted the teacher that AA was sick, saying "Yes please get her a packet [of school work] together if I cannot pick it up upon her return please send it home with her and I will make sure she make [sic] it up."

45.

These messages show that AA was acting normally and without any distress, embarrassment, or humiliation while back at school. They clearly demonstrate that she was even excited about being at school in the weeks after the incident.

**D. Disenrollment from School**

46.

Based on information and belief, sometime between on or about February 5, 2025, and February 11, 2025, an employee of the Zachary Community School Board sent paperwork to AA's mother Jamisha Augustine, demanding that she present proof of residency within the school district.

47.

It was suspected by many district employees familiar with Jamisha Augustine that she was stealing the services of the Zachary Community School Board by sending her children to school

there despite not living in the district.

48.

After receiving this notice, on February 11, 2025, Jamisha Augustine went on the local news to report the bathroom incident with AA.

49.

In news reports, Jamisha Augustine falsely claimed the school had given AA food to which AA was allergic, falsely claimed it prompted AA to have diarrhea, falsely claimed AA was not provided access to the bathroom, and falsely claimed an employee at the school forced AA to clean up the feces with a mop.

50.

After the news report, AA did not return to the school.

51.

AA was disenrolled on February 17, 2025.

52.

AA stated she wanted to leave the school because she was humiliated, after her mother's public announcement on the news that AA soiled her pants at school.

**E. The Wrongful Arrest**

53.

At the same time, Jamisha Augustine wrote on social media "We have secured civil and criminal attorneys because we refuse to let this injustice be swept under the rug."

54.

Attorney Ron Haley represented Jamisha Augustine and, with the assistance of local NAACP members, began to pressure the Zachary Police Department to arrest Mrs. Gilpin, in order

to assist with a civil lawsuit that Jamisha Augustine would ultimately file against Mrs. Gilpin in the matter styled, *Jamisha Augustine, individually and on behalf of her minor child, "AA" vs. Zachary Community School Board & Kristy Gilpin*, No. C-772400, 19th Judicial District Court, State of Louisiana.

55.

In response to the pressure applied by Ron Haley, the NAACP members, and Jamisha Augustine, Minor and other members of the Zachary Police Department opened a criminal investigation into the incident.

56.

Neither Minor nor any member of the Zachary Police Department consulted with any prosecutor or attorney during the investigation.

57.

On February 20, 2025, Minor had a meeting with Ron Haley, Jamisha Augustine, and the NAACP official.

58.

At the meeting, Minor "learned that Jamisha officially withdrew AA from Rollins Place on 2/17/25 because AA expressed that she was sad and was being made fun of."

59.

After the meeting, Minor began preparing an affidavit seeking a warrant for the arrest of Mrs. Gilpin.

60.

On March 13, 2025, Minor signed an Affidavit for Arrest Warrant accusing Mrs. Gilpin of committing the crime of Cruelty to Juveniles under La. R.S. 14:93.

61.

In his Affidavit for Arrest Warrant, Minor accused Mrs. Gilpin of committing a crime that could cause her to be imprisoned at hard labor for up to 20 years. La. R.S. 14:93.D.(2).

62.

The elements of the crime of Cruelty to Juveniles are 1) the intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen, and 2) whereby unjustifiable pain or suffering is caused to said child.[1] La. R.S. 14:93.A.(1).

63.

The Louisiana Supreme Court has determined the term “mistreatment” in La. R.S. 14:93 means “abuse.” *State v. Comeaux*, 319 So.2d 897, 899 (La. 1975).

64.

The Louisiana Supreme Court has also explained that for the offense of Cruelty to Juveniles, the Legislature “contemplated something more than the psychological pain which any child might suffer upon any separation from its parent.” *State v. Barr*, 354 So. 2d 1344, 1347 (La. 1978). The court further explained that “‘[u]njustifiable pain and suffering’ must be understood to mean something more than psychological harm resulting from the simple fact of separation of parent and child.” *Id.* With that explanation, the Supreme Court ruled that a mother who abandoned her 2-year-old on Bourbon Street did not violate the statute. *Id.*

---

[1] Not relevant to this case, Cruelty to Juveniles also includes as alternative offenses “The intentional or criminally negligent exposure by anyone seventeen years of age or older of any child under the age of seventeen to a clandestine laboratory operation as defined by R.S. 40:983 in a situation where it is foreseeable that the child may be physically harmed” as well as “The intentional or criminally negligent allowing of any child under the age of seventeen years by any person over the age of seventeen years to be present during the manufacturing, distribution, or purchasing or attempted manufacturing, distribution, or purchasing of a controlled dangerous substance in violation of the Uniform Controlled Dangerous Substances Law.” La. R.S. 14:93(A)(2) and (3).

65.

<u>All cases</u> reported in any court in Louisiana regarding violations of La. R.S. 14:93, Cruelty to Juveniles, involve <u>significant physical abuse or physical harm</u>. *See, e.g.*, *State v. Barnett*, 521 So.2d 663 (La. App. 1988) (child beaten with belt all over body causing severe bruising); *State v. Bridges*, 2012 KA 2120 (La. App. Jun 07, 2013) (child pushed and punched in the face repeatedly); *State v. C.S.D. & E.L.C.*, 4 So.3d 204 (La. App. 2009) (child shackled to bed and locked in bedroom every day); *State v. Chacon*, 860 So.2d 151 (La. App. 2003) (child punched in arm so hard a bruise was still there two days later); *State v. Ernest*, 710 So.2d 814 (La. App. 1998) (babysitter forcibly jammed baby bottle into mouth of 5-month-old cutting her lip, slammed the baby into a changing table fracturing skull, and shook the baby); *State v. Hathorn*, 395 So.2d 783 (La. 1981) (mother of children intentionally put rat poison into breakfast food); *State v. Hayes*, No. 07-979 (La. App. Mar 05, 2008) (3-year-old victim beaten with bruising all over body; 1-year-old victim bitten); *State v. Merritt*, 875 So.2d 80 (La. App. 2004) (2-year-old victim sprayed in eyes with hair spray and leg and arms fractured); *State v. Sedlock*, 882 So.2d 1278 (La. 2004) (school principal kicked child and kneed him in the back); *State v. Spencer*, 486 So.3d 870 (La. App. 1986) (hand mark and bruising on child's buttocks and burns and bruises on her wrist); *State v. Swan*, 544 So.2d 1204 (La. App. 1989) (child shot at with gun and beaten).

66.

Four cases in Louisiana jurisprudence on this statute specifically involved reactions by adults to children soiling themselves. They each involved the death or grievous bodily harm of a child. See *State v. Green*, 449 So.2d 141 (La. App. 1984); (after accident, child's feet put into scalding water resulting in burns that required reconstructive surgery); *State v Kelli*, 239 So.3d 432 (La. App. 2018) (after child defecated in in bathtub and played with it, defendant snatched child

from the tub, crushed his chest, and threw him against the toilet, resulting in child dying overnight); *State v. Morrison*, 582 So.2d 295 (La. App. 1991) (after accident, child was held in scalding water resulting in second and third degree burns over 30% of body); *State v. Stevens*, 532 So. 2d 197 (La. App. 1988) (after accident, child's buttocks were dipped and held in scalding water resulting in second and third degree burns). Louisiana jurisprudence clearly and unmistakably establishes that it is abusive under La. R.S. 14:93(A)(1) to crush a child's ribcage or burn skin off a child in a reaction to a potty accident, whereas it is not abusive to tell a child that it is naughty to make a mess on purpose and to direct the child to clean up the mess using proper technique and supervision.

67.

During Minor's criminal investigation, Principal Day was interviewed. She was not asked a single question, nor did she speak about anything related to or regarding child abuse or cruelty. She was not asked a single question, nor did she speak about anything related to AA experiencing any pain or suffering.

68.

During Minor's criminal investigation, Nurse Felder was interviewed. She was not asked a single question, nor did she speak about anything related to or regarding child abuse or cruelty. She was not asked a single question, nor did she speak about anything related to AA experiencing any pain or suffering.

69.

During Minor's criminal investigation, Nurse Cress was interviewed. She was not asked a single question, nor did she speak about anything related to or regarding child abuse or cruelty. She was not asked a single question, nor did she speak about anything related to AA experiencing

any pain or suffering.

70.

During Minor's criminal investigation, school counselor Aslin was interviewed. She was not asked a single question, nor did she speak about anything related to or regarding child abuse or cruelty. She was not asked a single question, nor did she speak about anything related to AA experiencing any pain or suffering.

71.

Minor's investigation revealed no evidence of pain or suffering sustained by AA.

72.

Minor learned of no evidence that AA was ever taken to a doctor.

73.

Minor learned of no evidence that AA was ever taken to a counselor.

74.

Minor learned of no evidence AA ever received any treatment of any kind.

75.

Minor obtained no statement from AA or from any other witness that AA experienced any pain or suffering, much less the unjustifiable pain or suffering required by La. R.S. 14:93.A(1).

76.

Minor's Affidavit for Arrest Warrant contains no evidence whatsoever of child abuse or cruelty.

77.

Minor's Affidavit for Arrest Warrant contains no evidence whatsoever of AA experiencing any pain or suffering.

78.

On the contrary, Minor related in his affidavit that AA simply stated that "she was fussed at and it made her feel sad."

79.

When he signed and submitted his affidavit, Minor knew that AA did not experience any pain or suffering from cleaning up the mess she made in the bathroom.

80.

When Minor signed and submitted his affidavit, all reasonable police officers knew that "Every teacher is authorized to hold every pupil to a strict accountability for any disorderly conduct in school." La R.S. 17:223.A.

81.

When Minor signed and submitted his affidavit, all reasonable police officers knew that "A teacher has the right to appropriately discipline students in accordance with R.S. 17:223 and 416 through 416.16 and any city, parish, or other local public school board regulation." La R.S. 17:416.18.A.(2).

82.

Minor had no probable cause to allege that Mrs. Gilpin was guilty of an offense under La. R.S. 14:93.

83.

Despite the Affidavit for Arrest Warrant containing no evidence of the essential elements of La. R.S. 14:93, and thus containing no probable cause of an offense under La. R.S. 14:93, Minor submitted it to Commissioner Jermaine Guillory of the 19th Judicial District who signed the arrest warrant that Minor requested.

84.

On March 13, 2025, as a result of the arrest warrant procured by Minor, Mrs. Gilpin was seized, arrested, and booked into jail, for the crime of Cruelty to Juveniles in violation of La. R.S. 14:93.

**F. The Dropping of All Charges by the Attorney General's Office**

85.

After Mrs. Gilpin's arrest, The East Baton Rouge Parish District Attorney recused his office from the case due to a potential conflict of interest. The matter was transferred to the Louisiana Attorney General.

86.

The Attorney General's office reviewed the case carefully and conducted an additional investigation into the allegations made by Minor in his affidavit.

87.

Ultimately, on June 25, 2026, the Attorney General's office declined to prosecute Mrs. Gilpin for the charge alleged by Minor.

**Count I. False arrest and false imprisonment.**

88.

Mrs. Gilpin re-avers and re-alleges the foregoing allegations of this Complaint.

89.

Minor obtained an arrest warrant for Mrs. Gilpin despite there being no probable cause that Mrs. Gilpin had committed any crime.

90.

Minor had no probable cause to believe that Mrs. Gilpin had committed any crime but merely declared that there was probable cause to charge her with Cruelty to Juveniles.

91.

Minor is liable unto Mrs. Gilpin as a matter of Louisiana law for the false arrest, unlawful detention, and false imprisonment of Mrs. Gilpin without probable cause.

**Count II. Unreasonable seizure.**

92.

Mrs. Gilpin re-avers and re-alleges the foregoing allegations of this Complaint.

93.

Minor is liable unto Mrs. Gilpin for the unreasonable seizure of Mrs. Gilpin without reasonable suspicion, probable cause, arguable probable cause, or any legal justification whatsoever, in violation of Mrs. Gilpin's rights guaranteed by the Fourth Amendment to the United States Constitution.

94.

Minor is liable unto Mrs. Gilpin for the unreasonable seizure of Mrs. Gilpin based on a legally defective and deficient affidavit that gave rise to the warrant and arrest. *See, e.g., Malley v. Briggs*, 475 U.S. 335 (1986).

**Count III. Intentional infliction of emotional distress.**

95.

Mrs. Gilpin re-avers and re-alleges the foregoing allegations of this Complaint.

96.

Minor's conduct was extreme and outrageous and caused Mrs. Gilpin severe anguish and severe emotional distress.

97.

Minor desired to inflict severe emotional distress on Mrs. Gilpin or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

98.

Accordingly, Minor is liable unto Mrs. Gilpin for intentional infliction of emotional distress.

**Count IV. Malicious prosecution.**

99.

Mrs. Gilpin re-avers and re-alleges the foregoing allegations of this Complaint.

100.

Minor initiated a criminal proceeding against Mrs. Gilpin without probable cause, and the proceeding was terminated in Mrs. Gilpin's favor.

101.

Accordingly, Minor is liable unto Mrs. Gilpin for malicious prosecution as a matter of Louisiana law.

102.

Further, Minor's malicious prosecution of Mrs. Gilpin was calculated to, and did, result in the seizure and arrest of Mrs. Gilpin in violation of Mrs. Gilpin's rights protected by the Fourth Amendment to the United States Constitution.

103.

Accordingly, in addition to Louisiana law, Minor is liable unto Mrs. Gilpin for malicious prosecution as a matter of federal law, actionable under 42 U.S.C. §1983.

**Count V. Punitive Damages**

104.

Mrs. Gilpin re-avers and re-alleges the foregoing allegations of this Complaint.

105.

All public officials are deemed to know the well-settled law they enforce and the clearly established constitutionally protected rights they have sworn to uphold.

106.

All public officials know that maliciously seeking an arrest warrant based on a sworn affidavit that is devoid of probable cause is unconstitutional and unlawful.

107.

The above-described conduct of Minor was extreme and outrageous, and done either maliciously or with reckless indifference to Mrs. Gilpin's rights.

108.

Minor is liable unto Mrs. Gilpin for punitive and/or exemplary damages as a matter of federal law.

**Count VI. Vicarious liability.**

109.

Mrs. Gilpin re-avers and re-alleges the foregoing allegations of this Complaint.

110.

At all times material hereto, Minor was acting under color of law and in the course and

scope of his employment by the City of Zachary as an officer of the Zachary Police Department.

111.

The City of Zachary is vicariously liable for all Louisiana state law torts committed by or attributable to Minor as a matter of Louisiana law.

**Jury Demand**

112.

Mrs. Gilpin demands a trial by jury for all claims and issues so triable.

**Prayer for Relief**

**WHEREFORE,** Complainant, Kristy Gilpin, prays that this Complaint be deemed good and sufficient and that after due proceedings are had, judgment be rendered on behalf of Mrs. Gilpin and against Defendants Justin Minor and the City of Zachary, jointly, severally, and in solido, for the following damages:

A. Past and future mental and emotional distress and outrage;

B. Past and future, loss of enjoyment of life;

C. Past and future physical pain, suffering, and disability;

D. Past and future loss of earnings and loss of earning capacity;

E. Past and future loss of reputation and personal and professional standing;

F. All costs, expenses, and attorney's fees associated with the false arrest, detention, unreasonable seizure, and malicious prosecution;

G. Attorney's fees and costs associated with this lawsuit;

H. Punitive damages;

I. Exemplary damages;

J. Interest on all damages, costs, attorney's fees, and other elements of recovery to the fullest extent allowed by laws of Louisiana and the United States.

Mrs. Gilpin further prays for all other damages and legal and equitable relief to which he may be entitled.

Respectfully submitted:

KEARNEY LOUGHLIN, LLC

/s/ Kearney S. Loughlin

KEARNEY S. LOUGHLIN
La. State Bar No. 26391
602 Boulder Creek Parkway
Lafayette, Louisiana 70508
Telephone: (337) 534-8803
Facsimile: (337) 628-2161
Email: kearney.loughlin@gmail.com
**Attorney for Kristy Gilpin**